**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Remigio G.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary of Homeland Security*; David Venturella, *Acting Director of U.S. Immigration & Customs Enforcement*; Marcos Charles, *Acting Executive Associate Director for Enforcement and Removal Operations*; U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; David Easterwood, *Field Office Director for Enforcement and Removal Operations*; and Joel Brott, *Sherburne County Sheriff*,

Respondents.

File No. 26-CV-04329 (JMB/LIB)

**ORDER**

---

Nicholas Ratkowski, St. Paul, MN, for Petitioner Remigio G.

Carl Berry and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; David Easterwood, and Joel Brott.

---

This matter is before the Court on Petitioner Remigio G.'s[1] Amended Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 9 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS), David Easterwood, and Joel Brott as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

1. Remigio G. is a 54-year-old native and citizen of Mexico who has lived in the United States since 2006. (Pet. ¶ 12.) Remigio G. is the father of a United States citizen and his household's primary provider. (*Id.* ¶¶ 1, 46, 60.)

2. Remigio G. is in the process of removal proceedings, but no final order of removal has been entered in his case. (*Id.*¶ 48.) Remigio G. was convicted of driving under the influence more than 20 years ago but has since completed probation, and the record contains no evidence of any other criminal history. (*Id.* ¶ 47.)

3. On October 4, 2026, while "working fugitive operations[2] in Burnsville,

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

[2] This term is not defined or explained. The Court is concerned that this term and others like it, such as "targeted enforcement operation," are not, in fact, accurate descriptions of the activities of the federal officers involved. In most immigration habeas cases that the Court has reviewed (and as it appears was the case here), federal officers taking a petitioner into custody have no knowledge of the petitioner's identity prior to initiating contact with the petitioner. Thus, despite the term used, the petitioner is not a fugitive, and the operation is not targeted to that specific person. Not only are such terms disingenuous—or even fraudulent—representations when used to describe conduct such as checkpoints or license plate checks, but they also potentially violate the Fourteenth Amendment if officers are

MN," ICE agents observed a vehicle with a Minnesota license plate pass their location. (Doc. No. 13-1 at 2.) These officers then followed the vehicle for 8 miles before initiating a traffic stop by swarming the vehicle Remigio G. was driving and maneuvering three vehicles to block the vehicle. (*Id.*; Pet. ¶ 50–52.) Remigio G. had not committed any traffic violation, nor did officers inform him of any traffic violation. (Pet. ¶ 51.)

4. ICE agents asked Remigio G. a series of questions in English. Despite Remigio G. only understanding some English, he complied as best he could with all the agents' requests. (*Id.* ¶ 53; Doc. No. 13-1 at 2.) He rolled down his window, turned off the car, removed the key from the ignition, provided the agents with his driver's license, and stepped outside his vehicle. (Pet. ¶ 54; Doc. No. 13-1 at 2.) At no point did Remigio G. "run, pull away from the officers, resist, or attempt to leave." (Pet. ¶ 57.)

5. After complying with all of the agents' demands, Remigio G. was handcuffed and taken into custody. (*Id.* ¶ 56.)

6. A warrant had not been issued at the time Remigio G. was taken into custody by ICE agents. (*Id.* ¶ 24.)

7. Remigio G. was later served with an arrest warrant, approximately a half mile

---

only checking license plates of vehicles driven by people who present as Black, Latino, or members of another ethnic or racial group: it is well-established that the Equal Protection Clause of the Fourteenth Amendment prohibits selective enforcement of the law based on considerations such as race, ethnicity, or religion. *E.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016). Likewise, although Respondents advance no rationale for conducting the initial vehicle stop, the Court need not determine whether the initial traffic stop was valid given the Court's decision to grant the Petition.

away from the location of the initial stop. (Doc. No. 13-1 at 2.)

8. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 13-3.) Thus, Respondents detained Remigio G. pursuant to their authority under 8 U.S.C. § 1226.

9. ICE officers transported Remigio G. to the Whipple Building and then to Sherburne County Jail, where he remains detained. (Pet. ¶¶ 59–63.)

10. On October 7, 2026, Remigio G. filed his original Petition pro se, an application to proceed in District Court without Prepaying Fees or Costs, and a motion to appoint counsel. (*See* Doc. Nos. 1–3.) On October 8, 2026, this Court referred Remigio G. to the Pro Se Project. (Doc. No. 7.) Counsel's Notice of Appearance was entered on October 14, 2026. (Doc. No. 8.)

11. On October 14, 2026, Remigio G. filed his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet.)

12. On October 14, 2026, the Court ordered Respondents to respond to the Amended Petition on or before 11:00 a.m. on October 16, 2026. (Doc. No. 10.) Respondents filed a timely response. (Doc. No. 12.)[3]

[3] Respondents attached a Declaration of Deportation Officer Seth T. Patrin (Doc. No. 13), who was not one of the officers present on October 4, 2026. (*See* Doc. No. 13-1.) The Court observes that Patrin does not attest to having personal knowledge of the facts and circumstances of Remigio G.'s detention; instead, the declaration includes a boiler plate

## DISCUSSION

Remigio G. seeks immediate release, arguing that Respondents detained him without a valid warrant and violated the warrantless arrest requirements of 8 U.S.C. § 1357(a)(2), the provisions of 8 C.F.R. 236.1, and the Fifth Amendment. For their part, Respondents argue that detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2) and that Remigio G.'s detention satisfies the constitutional requirements of due process. The Court disagrees and orders the immediate release of Remigio G.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The

paragraph explaining that Patrin relies on his "professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers." (Doc. No. 13 ¶ 3.) Absent a declaration by someone with personal knowledge of the detention of Remigio G., Respondents provide almost no evidence concerning the relevant facts in this case.

petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that the Respondents detained Remigio G. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 13-3.) In response to the Petition, however, the Respondents advance a different basis for the detention of Remigio G., 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry).

This Court concludes that the Respondents cannot now change the basis for the detention of Remigio G. He was taken into custody under section 1226 alone, and the Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which the detention is purportedly based, the Court concludes that the Respondents have detained Remigio G. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject

to mandatory detention under section 1225(b) where Form I-200 warrant represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C. Violations of Applicable Regulatory and Statutory Requirements

Agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless arrest procedures.[4] 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); *see also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general procedures" for all "enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, Respondents violated applicable regulatory and statutory requirements in four respects.

First, Respondents did not comply with the requirements of section 287.8(c)(2)(ii) because the warrant in this case contains no statement of cause. On the Form I-200, the issuing officer must select one (or more) of five options as the basis for the determination of probable cause. (*See* Doc. No. 13-3.) In this case, no option is selected. (*Id.*) Therefore, Respondents cannot justify detention based on the Form I-200 that they issued.

[4] To the extent that portions of Respondents' written submissions suggest that they are free to disregard these regulations, the Court disagrees because it is aware of no binding legal authority for such a proposition and Respondents direct this Court to none.

Second, the warrant is invalid because the serving officer cannot be identified. Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). A Form I-200 is an administrative warrant which authorizes detention of a non-citizen's if it is "issued only by those immigration officers listed in [section] 287.5(e)(2) . . . and may be served only by those immigration officers listed in [section] 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1). Putting both requirements together, DHS may detain a non-citizen using Form I-200 only if the Form I-200 indicates who the issuing and serving immigration officers are and if those officers are, in fact, authorized to issue and/or serve the form. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). This is because only immigration officers are "authorized to issue warrants of arrest under the relevant regulation." *Fernando C. C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *5 (D. Minn. Feb. 17, 2026). Therefore, a warrant is invalid when it does not indicate who the issuing immigration officer is and who the serving immigration officer is. *Cf. Tanneh W. S. v. Blanche*, No. 26-CV-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) (holding that a Form I-200 warrant was valid when both the issuing and serving officers' information verified them as deportation officers).

Here, Respondents did not establish that they satisfied the second requirement of section 236.1(b)(1). While the Form I-200 warrant was issued by Supervisory Detention and Deportation Officer, Randy Langworthy, the Court cannot determine the name of the

serving immigration officer. (Doc. No. 13-3 at 1.) Respondents do not provide the Court with the officer's name, what position they hold, or make any statement or argument that this person is authorized to serve Form I-200 warrants under section 287.5(e)(3). *Cf. Fernando C. C.*, 2026 WL 446408, at *5. Thus, Respondents violated 8 C.F.R. § 236.1(b)(1), and the warrant is invalid.

Third, Respondents did not comply with the requirements of a warrantless arrest.[5] Absent a valid warrant, Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause").

Here, Respondents make no argument that probable cause existed concerning either requirement. Absent any argument, the Court necessarily agrees with Remigio G. that Respondents have not established that at the time they initiated the detention, officers had

[5] Respondents make no argument and present no evidence to establish that the Form I-200 was issued prior to taking Remigio G. into custody. Moreover, the record establishes that a warrant was not issued or served until after Respondents took Remigio G. into custody. (Pet. ¶ 24; Doc. No. 13-1 at 2.) Nevertheless, because the Form I-200 is invalid, Respondents would have to satisfy section 1357(a)(2) even if they had established that the warrant was issued prior to taking Remigio G. into custody.

probable cause to believe he was likely to escape.[6] In addition, and in contrast to the facts in *Quintana*, 623 F.3d at 1238, 1240–41, the record presented in this case establishes that Remigio G. was not likely to escape. Remigio G. had committed no traffic offense or other violation prior to the traffic stop, cooperated fully with the officers, answered truthfully about his identity, provided officers with identification documents in his possession that corroborated his identity, and removed the key from the ignition. (Pet. ¶¶ 53–55; Doc. No. 13-1 at 2.) Thus, the Court concludes that Respondents violated section 1357(a)(2).

Fourth, the record indicates that Respondents violated 8 C.F.R. § 236.1(b). Form I-200 authorizes taking a non-citizen into custody only if it is issued at the same time or after the issuance of an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1); *see also, e.g.*, *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28 (S.D. Iowa 2026) (concluding ICE had no authority to detain petitioner relying on a Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where a Form I-200 "was

[6] Generally, respondents waive arguments that they elect not to make. *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 822 n.6 (8th Cir. 2016) (noting that the government waived an argument by failing to raise it in an immigration appeal); *see also Estephanny P. v. Bondi*, No. 26-CV-198 (ECT/JFD), Doc. No. 10, at *3 (D. Minn. Jan. 15, 2026) (citing *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (concluding that failure to respond is an express waiver of those arguments or claims)); *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). Given the conclusion that Respondents have not established the second prong of section 1357(a)(2), the Court need not determine whether Respondents have also waived arguments regarding the first prong of this section.

not issued until after [petitioner's] arrest and initial detention"). Here, Respondents have not established that the Form I-200 was issued at the same time or after issuance of the NTA. *See* 8 U.S.C. §1226(a); 8 C.F.R. § 236.1(b)(1). There is no time stamp on the NTA, and the NTA was issued at Fort Snelling, Minnesota, a separate location from where Respondents took Remigio G. into custody. (*See* Doc Nos. 13-2; 13-3.) Thus, the Court cannot find that the Respondents followed the requirements of section 236.1(b)(1).

For each of these reasons, the detention of Remigio G. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (ordering release because the Form I-200 was invalid); *Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before taking a person into pursuant to section § 1226(a) is a violation of due process rights

and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026); *Carlos F.P.P v. Blanche*, No. 26-CV-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sep. 21, 2026) (ordering release after finding that respondents did not follow § 1357 requirements of warrantless arrest and § 1225 did not "independently authorize continuation of [petitioner's] custody").[7]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Remigio G. immediately, without conditions, and in any event no later than 4:00 p.m. CT on October 20, 2026.

2. On or before 11:00 a.m. CT on October 21, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Remigio G.

3. On or before 11:00 a.m. CT on October 21, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was

[7] Although the Court need not address the question of whether Remigio G.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Remigio G.'s favor. Remigio G. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, his inability to earn a living, and his separation from his grandchildren); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Remigio G.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV 2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Remigio G. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Remigio G. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 19, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court